## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARION L. DAVIS,** | ) | |
| **o/b/o Augustus C. Davis,** | ) | |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:08-CV-0291-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I. Introduction

On November 18, 2004, the claimant, Augustus C. Davis, protectively filed an

application for disability insurance benefits and Supplemental Security Income payments,

alleging disability beginning April 15, 2004.  Upon initial consideration, the Social Security

Administration denied the claims, and the claimant promptly filed a request for a hearing by an

Administrative Law Judge.  The claimant died on March 18, 2006, due to cardiopulmonary

arrest.  After his death, on December 13, 2006, the claimant's widow, Marion Lee Davis, filed a

Notice Regarding Substitution of Party Upon Death of Claimant (Form HA-539), asking to be

named as a substitute party and proceed with the hearing as the deceased claimant requested.

Mrs. Davis attended the hearing that the ALJ held on January 18, 2007.  Attorney William M.

Hanlin represented Mrs. Davis at that hearing.

On June 26, 2007, the ALJ denied the claimant's application for disability benefits on the

ground that Augustus C. Davis could perform sedentary work, as the impartial vocational expert

had testified during the hearing.  The Appeals Council denied the claimant's request for review

of the ALJ's decision on December 20, 2007.  The claimant has exhausted her administrative

remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the

reasons stated below, the court will AFFIRM the Commissioner's decision.

## II. Issues Presented

In this appeal, the claimant argues that the ALJ erred in two ways.  First, the claimant

alleges that the ALJ confused the credibility and work capacity of Augustus Davis with that of

his legal substitute, Mrs. Davis.  Second, the claimant argues that the ALJ erred in substituting

his own opinion for the medical evidence of record, and that this error led to the ALJ to

improperly conclude that Augustus Davis's impairments did not meet the requirements for

disability as defined in 20 C.F.R. § 404.1505(a).

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if his factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham

v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Brown*, 826 F.2d 996, 999 (11th Cir.

1987).  However, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal

conclusions, including determination of the proper standards to be applied in evaluating claims."

*Walker*, 826 F.2d at 999.

This court does not review the Commissioner's factual determinations *de novo*, but will

affirm those factual determinations that are supported by substantial evidence.  "Substantial

evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

3

416.920.

The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence.  A statement that the ALJ carefully considered all testimony and exhibits is not sufficient.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  The ALJ should state the weight accorded to all testimony presented at the hearing.  *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990).

### V. Facts

The original claimant, Augustus Davis, now deceased, was born in 1957 and would have been forty-nine years of age at the time of the administrative hearing.  Mr. Davis had a high school education and had attended two years of college, although he had not attained a degree. (R. 296-97).  Mr. Davis has previous work experience as a cook and as a middle manager at a restaurant.  (R. 306).  According to the claimant, he became disabled on April 15, 2004, due to a heart condition and back problems.  (R. 297).  Mr. Davis has not worked since June of 2004. (R. 296).

Following the stated onset date, Mr. Davis visited the hospital several times.  On May 23, 2004, Mr. Davis visited the emergency room at Cooper Green Hospital for a back injury that he incurred on the job while picking up a case of beer at Birmingham Beverage.  Treating physicians at Cooper Green diagnosed him with acute exacerbation of chronic back pain.  (R. 190-92).  Following the emergency room visit, the claimant participated in physical therapy from May 27 to June 4, 2004 to alleviate his back injury.  At the time of the physical therapy, the claimant had diagnoses from the Cooper Green Emergency Room doctors,  including lumbar

radiculopathy and lumbar strain.  While Mr. Davis's back condition improved somewhat during the course of the physical therapy, his pain persisted and the radiculopathy spread to the right leg. Upon discharge from physical therapy on June 4, 2004, Mr. Davis's therapists instructed him not to repetitively lift more than fifteen pounds, not to stand or walk more than five hours a day, not to bend more than three times an hour, and not to push or pull over fifteen pounds of force.  (R. 107).

On November 14, 2004, Mr. Davis suffered a heart attack.  He was hospitalized at Cooper Green Hospital for the four days following his heart attack.  His treating physicians at Cooper Green diagnosed him with myocardial infarction (MI), vasospasms, and acute cocaine intoxication. (R. 107).

On April 18, 2005, upon request of the Disability Determination Service (DDS), Mr. Davis submitted to a psychological consultative evaluation on behalf of the Social Security Administration.  Sally A. Gordon, Psy.D., conducted the evaluation.  (R. 170-73).  Dr. Gordon's report included that Mr. Davis continued to use cocaine (although he had "not used in the past month"), smoked cigarettes on a daily basis, and consumed alcohol.  Mr. Davis told Dr. Gordon that he had become depressed following his November 2004 myocardial infarction because of his deteriorating physical condition and loss of ability to function.  Dr. Gordon determined that Mr. Davis had a moderate depressive disorder and that he abused both cocaine and alcohol.  Dr. Gordon opined that Mr. Davis would likely have trouble working under pressure at the time she examined him; however, she determined that with medication and psychotherapy, he would likely be able to resume work in the future.  Dr. Gordon also noted that Mr. Davis was of average intelligence and was capable of managing the responsibilities of independent living and his own

finances.  (R. 170-73).

In addition to requesting the psychological examination of Mr. Davis, the DDS also requested a consultative physical examination, which Bruce Romeo, M.D., conducted on April 20, 2005.  Dr. Romeo conducted a multitude of tests and found that Mr. Davis had no back spasm or deformity (according to lumbosacral X-rays), and that his gait was normal, allowing him to stoop, kneel, and crouch.  Dr. Romeo also concluded that Mr. Davis could lift twenty pounds of weight at any time and had no physical restrictions on standing, walking, or sitting.  Dr. Romeo found that Mr. Davis's heart had a regular rate and a normal rhythm.  At the end of the examination, Dr. Romeo gave no diagnosis and concluded the claimant's various complaints were subjective.  (R. 174-183).

On June 2, 2005, a psychologist, Kenneth Warren, Ph.D., performed a mental residual functional capacity assessment for Mr. Davis.  Dr. Warren opined that Mr. Davis was not disabled and could work with some restrictions.  (R. 202-227).

Five days later, on June 7, 2005, Mr. Davis visited the emergency room with a claim of back pain that had begun four days prior.  (R. 184).

On July 2, 2005, Mr. Davis suffered a second heart attack.  He was hospitalized at Cooper Green Hospital for ten days until his release on July 12, 2005.  His diagnoses included acute myocardial infarction, cocaine abuse, iron deficiency anemia, and tobacco abuse.  (R. 227-28).  Mr. Davis told the Cooper Green doctors he had been using cocaine for a period of four days prior to his hospitalization.  Mr. Davis's discharge instructions indicated that he was able to return to work "full time" on July 13, 2005.  (R. 233).

Mr. Davis's only relevant medical records following his second heart attack in July of

6

2005 are from March 18, 2006.  On that date, paramedics were called to Mr. Davis's home.  The paramedics' attempts at cardiopulmonary resuscitation were unsuccessful, because Mr. Davis had died suddenly from cardiopulmonary arrest.  (R. 283-91).

During the administrative hearing, the vocational expert (VE) testified that Mr. Davis did not have the residual functional capacity to perform any past relevant work.  Taking into consideration Mr. Davis's age, education, work experience, and RFC, the VE stated that although Mr. Davis had not acquired any transferable work skills from his prior work, he did have the capacity to perform unskilled, sedentary work.  The VE testified that, given Mr. Davis's limitation to unskilled, sedentary work, he could work as an inspector or general office clerk, both jobs that were widely available in the state of Alabama.  (R. 25-25A).

The ALJ found that the medical evidence indicated that Mr. Davis had the following "severe" impairments: coronary artery disease, cocaine abuse, alcohol abuse, tobacco abuse, and depression.  Comparing these "severe" impairments with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ found that Mr. Davis's impairments were not of listing-level severity.  Taking into account the objective assessments and subjective complaints of the claimant, the ALJ gave little weight to the opinion of Dr. Gordon, the consulting psychologist, claiming that it was "internally inconsistent."  The ALJ made that determination because although Dr. Gordon opined that the claimant's depression was "no more than moderate in nature," that the claimant was of average intelligence, and that the claimant did not have a thought disorder, Dr. Gordon still concluded that the claimant needed medication therapy and psychotherapy for him to meet the basic mental demands of sustained employment.  (R. 21).  The ALJ placed great weight in consulting physician Dr. Romeo's opinion of the claimant's overall

7

physical well-being and also considered the opinion of Dr. Warren, the consulting physician who performed the mental RFC assessment and determined that Mr. Davis could work with some restrictions.  After reviewing the evidence, the ALJ concluded that Mr. Davis did not have an objectively identifiable disability and did not meet the burden of showing that his subjective complaints met the "pain standard" for disabling pain established by the Eleventh Circuit.  (R. 24-25).

After considering the claimant's age, education level, work experience, and RFC along with the VE's testimony, the ALJ concluded that Mr. Davis retained the residual functional capacity to perform sedentary work with some limitations in accordance with the guidelines set forth at 20 C.F.R. Part 404, Subpart P, appendix 2.  Because such jobs existed in sufficient numbers, the ALJ determined that Mr. Davis was able to work and, therefore, did not qualify for Disability Insurance Benefits under Title II of the Social Security Act nor for Supplemental Security Income under Title XVI of the Social Security Act..

## VI. Discussion

### A. Differentiating Between the Deceased Claimant and His Substitute

The claimant contends that the ALJ erroneously confused the credibility and work capacity of the deceased claimant with that of his legal substitute.  The claimant bases this argument on the fact that the ALJ referred to Augustus Davis, the deceased claimant, in the present tense throughout his opinion.  Specifically, the claimant points to the ALJ's Finding 6, which states that "[t]he claimant's assertions concerning his ability to work are not credible," and Finding 7, which states that "[t]he claimant retains the residual functional capacity to perform the exertional demands of sedentary work with [some] nonexertional limitations." (R. 25B).

8

Because Mr. Davis is deceased, Mrs. Davis, the substitute claimant, asserts that the ALJ's findings and conclusions make no sense and are not based on substantial evidence in the record.

Nevertheless, the ALJ specifically noted at the beginning of his opinion that "[b]ecause Mrs. Davis is a substitute party, Mr. Davis will be referred to in the present tense." (R. 20). Though speaking in the present tense about a deceased claimant's ability to work may seem confusing, the ALJ's opinion makes clear that his determination was based upon Mr. Davis's medical records and the "allegations of disability made either by the claimant or on his behalf." (R. 24).  Nothing in the ALJ's opinion indicates that he evaluated Mrs. Davis's credibility, work capacity, or medical records.

Throughout the ALJ's opinion, he specifically cites to assessments of Mr. Davis and draws conclusions therefrom.  The evidence cited in the opinion and in the record as a whole constitutes "such relevant evidence as a reasonable person would accept as adequate to support a conclusion," regardless of the verb tense the ALJ chose to employ.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  Therefore, the ALJ did not erroneously confuse the credibility and work capacity of the deceased claimant with that of his legal substitute.

**B. Examination of the Medical Records**

The claimant asserts that Mr. Davis would be eligible for disability benefits.  As part of the burden of proving disability, the claimant must establish that he has not engaged in substantial gainful activity since the alleged disability onset date.  To make a valid claim for disability benefits, the claimant must initially establish the existence of a disability.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  After examining the evidence in the case, the ALJ found that the claimant, Mr. Davis, met his burden of proof and proved that he had the

following "severe" impairments: coronary artery disease, cocaine abuse, alcohol abuse, tobacco abuse, and depression.  However, the ALJ concluded that none of these impairments met or equaled those impairments contained in the "listings" of 20 C.F.R. § 404.1520(d); therefore, the ALJ then had to determine whether the "severe" impairments that Mr. Davis alleges would prevent him from returning to his past relevant work.  The ALJ's Finding 8 states that Mr. Davis could not return to his past relevant work.  (R. 25B).

The claimant contends that the ALJ erroneously substituted his own judgment for the conclusions of the claimant's physicians and, as such, the ALJ improperly concluded that Augustus Davis's impairments did not meet the Listings.  Specifically, the claimant asserts that the ALJ should have given more weight to consultative psychologist Dr. Gordon's opinions.

The ALJ properly indicated the weight given to different evidence in his opinion.  *See Sharfaz v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  The law allows the ALJ to reject any medical opinion if evidence supports a contrary conclusion.  *Sryrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  A physician's report can be discounted when it is not accompanied by objective medical evidence.  *Crawford v. Comm. of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Regarding Mr. Davis's "depression," the ALJ determined Dr. Gordon's opinion to be "internally inconsistent" and gave her opinion less weight than that of the other consulting doctor.  (R. 20-21).  Because Dr. Gordon stated that the claimant had only a "moderate" depressive disorder, yet could not work, the ALJ determined her opinion was inconsistent.  The ALJ noted that if Mr. Davis's depression were moderate, the claimant would be able to meet the mental requirements of some types of work.  *See Edwards v. Sullivan*, 937 F.2d 580 (11th Cir. 1991).  The ALJ determined that the conclusion Dr. Gordon drew about the work capacity of Mr.

10

Davis was not objectively supported by her finding of "moderate" depression.  The evaluation of Dr. Warren, the psychologist who performed Mr. Davis's RFC assessment, further supported the finding that the claimant was not mentally disabled and his depression would not have barred him from functioning in some types of work environments.  (R. 22).

The claimant argues that his addictions are evidence of an impairment and alleges that his failure to seek help for his cocaine, alcohol, and tobacco addictions may be a result of an impairment itself, rather than evidence that the impairment is not severe, citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121-24 (6th Cir. 1989).  In the Eleventh Circuit, however, the law is well established that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability.  20 C.F.R. § 404.1530(b); *see Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  Furthermore, the burden is on the claimant to prove that his substance abuse prevents him from working.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The claimant offered neither a good reason for his refusal to seek help for his addictions nor evidence that his abuse prevented him from working.  Therefore, the ALJ found no evidence supported a conclusion that Mr. Davis's addictions themselves represented impairments.

Based on an examination of the medical records and the evidence presented at the hearing, the ALJ determined that the claimant retained the residual functional capacity to perform sedentary work with some limitations.  (R. 25).  When a claimant cannot perform a full range of work at a given level of exertion and has nonexertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a Vocational Expert.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.

11

1999).  At the hearing, the ALJ examined Dr. Mary House Kessler, who testified as a vocational expert.  The ALJ posed a hypothetical to Dr. Kessler, asking her to take into account Mr. Davis's age, education, and work experience; to assume that he could perform simple but not complex tasks; to assume that he could maintain attention and concentrate for two hours at a time; to assume that he could complete an eight hour day, provided all customary breaks were given; and to assume that he could casually interact with coworkers and the public.  Provided that any changes to the work setting be gradual and further, that Mr. Davis did not work in an area with dangerous or moving equipment, the ALJ asked if it would be possible for the claimant to return to his past relevant work at a sedentary level.  Dr. Kessler testified that it would not be possible for claimant to return to his previous type of employment, because his work as a restaurant cook and middle level manager were jobs on a medium level, not a sedentary one, with tasks more complicated than "simple." (R. 306-08).  The ALJ accepted the testimony of the vocational expert as to the RFC of Mr. Davis and found that the claimant did not have the RFC to perform any past relevant work.  (R. 25).

Once the finding is made that a claimant cannot return to prior work, the burden of proof shifts to the Commissioner to show other work the claimant can do.  *Foote v. Charter*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must "show the existence of other jobs in the national economy which, given the claimants impairments, the claimant can perform."  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Taking into account all of the circumstances posed in the aforementioned hypothetical, the ALJ asked the vocational expert if any jobs existed in the local or national economy that Mr. Davis could perform within the confines of his existing limitations.  The VE testified that the claimant was capable of working in the capacity of an

inspector, sorter, or in some line of production work.  She testified that approximately 4,000 of these types of jobs existed at an unskilled level in the state of Alabama.  She further testified that Mr. Davis could also perform work as a general office clerk or order clerk and that approximately 5,000 of those types of jobs existed at an unskilled level in Alabama.  (R. 308).

During the examination of the VE, the ALJ posed a hypothetical to Dr. Kessler asking if Mr. Davis would be able to have a flexible schedule at the types of jobs enumerated.  Dr. Kessler replied that there would be little flexibility at these unskilled jobs, and Mr. Davis would not be able to miss many days of work without facing unemployment.  (R. 309).  To deny disability benefits to claimant, the ALJ must articulate specific jobs that the claimant is able to perform and support such a finding by substantial evidence.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  The ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.  *Crawford v. Comm. of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Although the claimant argues that the ALJ should have taken his back ailment into account when posing hypotheticals to the VE, he did not meet the burden of proof to confirm that his back ailment was a "severe" impairment.  Therefore, the ALJ does not have to take that ailment into account in the hypotheticals.  The hypotheticals need only include the claimant's impairments (that the ALJ found as "severe"), not each and every symptom that he experienced.  *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007).  The ALJ met the burden of establishing that although the claimant could not perform his past relevant work, the claimant would be able to do alternative work that was widely available in the state economy.  The burden is on the claimant to prove that he is unable to perform the jobs suggested.  See *Hale v. Bowen*,

831 F.2d 1007, 1011 (11th Cir. 1987); see also *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.

1983).  Mr. Davis did not prove that he was unable to work in a sedentary, unskilled job as the

VE suggested, nor does any of the medical evidence support such a conclusion.

Because the claimant failed to carry the burden of producing evidence to show his

disability, the ALJ properly found Mr. Davis was not disabled.  The evidence from the hearing is

recited in detail in the ALJ's written decision.  See *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th

Cir. 1985).  This court concludes that substantial evidence exists to support the ALJ's denial of

disability benefits to the claimant.

## C. Application of Proper Legal Standards

The claimant asserts that the ALJ erred by failing to apply proper legal standards in

determining that Mr. Davis's history of heart attacks did not satisfy the definition of disability.

Mr. Davis experienced two heart attacks prior to his death, in 2004 and 2005.  In both instances,

Mr. Davis was discharged in good condition.  According to law found in 20 C.F.R. Subpart P §

404.1505(a), disability is "the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months."  The ALJ noted that, when Mr. Davis was discharged after his July 2, 2005, admission

to Cooper Green Hospital for myocardial infarction, he was cleared to return to full-time work on

July 13, 2005.  (R. 23, 25, 228-33).  The treatment records between Mr. Davis's July 2005

discharge and his March 2006 death show no indication that he was expected to die from his

condition.  The medical record shows that Mr. Davis never met the regulatory definition of

disability because his condition was never expected to endure for twelve months or to result in

death.  Therefore, this court finds that the ALJ properly applied the disability standard when he made the determination that Mr. Davis's heart condition did not meet the legal disability definition.

## VII. Conclusion

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate Order will be entered

Dated this 11th day of August, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE